# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00310-CV

**Shafaria Marie Titus, Appellant**

**v.**

**Southern County Mutual Insurance as Subrogee for T. W. Sales, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 280329, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Shafaria Marie Titus brings a restricted appeal from a no-answer default judgment rendered against her in favor of Southern County Mutual Insurance ("Southern") as subrogee for T.W. Sales. *See* Tex. R. App. P. 30. Because we hold that the record does not show strict compliance with the rules for service of process, we reverse and remand.

## BACKGROUND

On June 20, 2003, Titus was involved in a motor vehicle collision with a vehicle owned by T.W. Sales and driven by one of its employees.[1] Southern, as the insurer for T.W. Sales, paid for damages to the company's vehicle. On August 20, 2004, Southern filed suit against Titus in Travis County, alleging that she negligently caused the damage to T.W. Sales's vehicle.

---

[1] The accident occurred in Fort Worth, Tarrant County, Texas.

On August 26, 2004, Southern attempted to serve Titus via certified mail to "6008 Oakland Knoll Drive #251, Fort Worth, Texas 76112." Titus did not claim the certified mail. On October 4, 2004, Southern filed a motion for substitute service of process, requesting the trial court to authorize service by mailing the citation via first class mail to the Oakland Knoll address. Attached to the motion was an affidavit signed by Scott Thomas, a private process server. Thomas averred that he had mailed the citation and a copy of the petition to Titus at the Oakland Knoll address, that the post office had twice notified Titus of the certified mailing, that Titus had not claimed the certified mail, and that Thomas had confirmed with the post office that there was no change of address order on file for Titus. Based on these facts, Thomas averred that personal service and service via certified mail were not feasible and recommended service via first class mail.

The trial court granted Southern's motion for alternate service of citation and ordered that Titus be served by first class mail, with no return receipt required. Thomas served Titus in accordance with the trial court's order on October 12, 2004. Titus did not timely file an answer. On November 16, 2004, the trial court granted a default judgment against Titus and awarded Southern $6,692 in unliquidated damages.

On appeal, Titus argues that the default judgment was in error because the affidavit in support of substituted service was insufficient, the citation was defective, and venue was improper; she further argues that, even if the default judgment was proper, there was insufficient evidence to support the damages award.

## DISCUSSION

To prevail in a restricted appeal, a party must establish that (1) it filed notice of the restricted appeal within six months after the judgment was signed, (2) it was a party to the underlying

suit, (3) it did not participate in the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law, and (4) error was apparent on the face of the record. *See* Tex. R. App. P. 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). In this case, the parties dispute only the fourth element—whether error is apparent on the face of the record.

Titus argues, among other things, that the trial court did not obtain jurisdiction over her because the substituted service was defective. In a restricted appeal, defective service of process constitutes error on the face of the record. *Hubicki v. Festina*, 226 S.W.3d 405, 407 (Tex 2007); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994). In contrast to the usual rule that all presumptions—including valid issuance, service, and return of citation—will be made in support of a judgment, no such presumptions apply to a direct attack on a default judgment. *Hubicki*, 226 S.W.3d at 407; *Primate Constr.*, 884 S.W.2d at 152; *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985). Rather, the record must affirmatively show strict compliance with the applicable rules relating to service of process. *Hubicki*, 226 S.W.3d at 408; *Uvalde Country Club*, 690 S.W.2d at 885. Even actual notice to a defendant is not sufficient to convey jurisdiction on the trial court and will not serve to cure defective service. *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 376 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Whether service was in strict compliance with the rules is a question of law we review de novo. *Furst v. Smith*, 176 S.W.3d 864, 868-69 (Tex. App.—Houston [1st Dist.] 2005, no pet.). It is the responsibility of the party requesting service to ensure both that proper service is accomplished and that the record reflects proper service. *Id.*

3

Titus was served under substituted service, which is governed by Rule 106.  *See* Tex. R. Civ. P. 106.[2]  Under Rule 106, when the traditional methods of service of process—in person or via certified mail—are infeasible, the trial court may, "upon motion supported by affidavit," authorize service in a manner "that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit."  *Id.* Rule 106(b).  The supporting affidavit must state (1) "the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found" and (2) the specific facts showing that traditional service has been attempted "at the location named in such affidavit but has not been successful."  *Id.*

---

[2]  Rule 106 provides:

(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

　　(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or

　　(2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service

　　(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

　　(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P. 106.

Titus contends that Thomas's affidavit does not meet either requirement because it does not state the location of her usual place of abode and because it does not specify sufficient facts regarding the prior attempts at service.  In the affidavit, Thomas avers:

1.  August 26, 2004    I sent the citation with the accompanying copy of the petition by Certified Mail, Restricted Delivery, to the Defendant at:
6008 Oakland Knoll Drive #251, Ft. Worth, Texas 76112.

2.  September 2, 2004    Post office gave notice to the Defendant that there was a Certified Mail to be delivered to the Defendant.

3.  September 19, 2004    Defendant was again given notice by the U.S. Postal Service.

As indicated on the attached Request for Change of Address or Boxholder request form the U.S. Postal Service confirms that the defendant receives mail at the address. Defendant did not claim the Certified Mail containing the citation and petition.  I believe that personal or Certified Mail service on the defendant is not feasible.

Attached to the affidavit is a form entitled "Request for Change of Address or Boxholder Information Needed for Service of Legal Process," with a check in the box next to "Address good. No change of address order on file."

We agree with Titus that the affidavit does not strictly comply with the first requirement of Rule 106.  While the affidavit does list an address for service—6008 Oakland Knoll Drive #251, Fort Worth, Texas 76112—it does not affirmatively show that this address was Titus's usual place of abode or other place where she could probably be found.  To show strict compliance with Rule 106, the affidavit must aver or otherwise provide probative evidence that the address for service is the defendant's usual place of business or usual place of abode or other place

5

where she can probably be found. *See In re Sloan*, 214 S.W.3d 217, 222 (Tex. App.—Eastland 2007, orig. proceeding) (holding that affidavit that did not contain information that address for service was usual place of abode did not meet requirements of Rule 106(b)); *Garrells v. Wales Transp., Inc.*, 706 S.W.2d 757, 759 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (holding that there must be evidence of probative value that address for service was defendant's usual place of business or usual place of abode or other place where defendant can probably be found); *see also Davis v. Martin*, No. 01-07-00831-CV, 2009 Tex. App. LEXIS 1040, at *12-13 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op.) (holding that affidavit that did not state that address for service was usual place of abode did not meet requirements of Rule 106(b)); *Goshorn v. Brown*, No. 14-02-00852-CV, 2003 Tex. App. LEXIS 8181, at *6 (Tex. App.—Houston [14th Dist.] Sep. 23, 2003, no pet.) (mem. op.) (holding that, while no magic words are required to show compliance with rule, facts averred in affidavit must prove that address for substituted service is defendant's usual place of business or usual place of abode or other place where defendant can probably be found).

Southern argues that, though the affidavit does not use the words "usual place of abode" to describe the listed address, the post office form is sufficient probative evidence that the address was in fact Titus's usual place of abode. We disagree. First, the form indicates only that Titus has not provided a forwarding address to the post office and therefore, so far as the post office knew, she was receiving mail at that address. People can receive mail at locations other than their usual place of abode;[3] therefore, this post office form, without more, does not affirmatively show that

---

[3] For example, college students often receive mail at their parents' address while, at the same time, their usual place of abode is in another town or even another state.

the location stated in the affidavit was, at that time or ever, Titus's usual place of abode. *See Davis*, 2009 Tex. App. LEXIS 1040, at *3, *12-13 (holding that affidavit averring that process server "checked with the post office and no forwarding address has been requested" did not comply with requirement to state location of defendant's usual place of abode). Second, even in cases upholding affidavits that do not contain the exact phrase "usual place of abode," the affidavits contain other language indicating that the defendant lived at the listed address. *See Goshorn v. Brown*, 2003 Tex. App. LEXIS 8181, at *6 (affidavit referenced "defendant's address" and response of person who answered door at home indicated that defendant lived there); *Pickersgill v. Williams*, No. 14-93-00424-CV, 1994 Tex. App. LEXIS 28, at *3-4 (Tex. App.—Houston [14th Dist.] Jan. 6, 1994, writ denied) (mem. op.) (affidavit referenced "the address I believe to be his place of residence"). Thomas's affidavit contains no such language.[4] Given our obligation to "rigidly enforce rules governing service when a default judgment is entered," *Hubicki*, 226 S.W.3d at 408, we cannot hold that Thomas's affidavit shows strict compliance with Rule 106(b).[5]

---

[4] Furthermore, neither the trial court's order nor Smith's return of service states that the address for substituted service was Titus's usual place of abode or other place where she could probably be found. This, too, is an error on the face of the record that requires reversal. *See Brown v. Magnetic Media, Inc.*, 795 S.W.2d 41, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ) (trial court's order and return of service must specifically state that address for service was defendant's usual place of business in order to comply with Rule 106); *Hurd v. D.E. Goldsmith Chem. Metal Corp.*, 600 S.W.2d 345, 346 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ) (reversing default judgment where neither constable's return nor trial court's order authorizing substitute service under Rule 106(b) stated that address for substituted service was defendant's usual place of business); *see also Davis v. Martin*, No. 01-07-00831-CV, 2009 Tex. App. LEXIS 1040, at *17 n.7 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op.).

[5] Titus also challenges the affidavit on the grounds that it is not based on Thomas's personal knowledge. *See Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (affidavit must positively and unequivocally show that it is based on personal knowledge). Specifically, Titus contends that Thomas could not have personal knowledge of the post office's attempts at service because he does

7

Even if the affidavit were sufficient to allow the trial court to order substitute service, Southern has not affirmatively shown that the particular service ordered in this case, citation by regular mail, was reasonably calculated to give the defendant notice of the suit. *See* Tex. R. Civ. P. 106(b)(2) (authorizing service "in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit."). While the Texas Supreme Court has held that substituted service by first class mail may be proper in some circumstances, *see State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 299 (Tex. 1993), it has also made it clear that the circumstances under which it is proper are limited. *Compare Hubicki*, 226 S.W.3d at 408 (service via regular mail held improper) *with Costley*, 868 S.W.2d at 299 (service via regular mail held proper). The plaintiff must meet a high evidentiary burden to prove that such service is reasonably calculated to provide notice of the proceedings in time to answer and defend. In *Costley*, State Farm had made ten failed attempts to personally serve the defendant and presented evidence proving that Costley lived at the service address and was receiving mail sent there. 868 S.W.2d at 299. This evidence included a copy of Costley's insurance policy, which contained his mailing address; a copy of a letter sent by State Farm to that same address, informing Costley of the attorney State Farm had retained for his defense; and a copy of a letter sent to State Farm from

_____

not allege that he was present at the time of the attempts. While we agree with Southern that a process server does not have to "ride with the U.S. Postal Service employee on each certified mail attempt," the affiant is not relieved from his obligation to show a basis for his knowledge. *Priesmeyer v. Pacific Sw. Bank*, 917 S.W.2d 937, 939 (Tex. App.—Austin 1996, no writ) ("The mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for such knowledge."). Here, Thomas does not swear that he received confirmation from the post office of its attempts to serve Titus, nor does he attach such confirmation or otherwise show the basis for his knowledge.

Costley's attorney which contained specific references to the letter sent to Costley by State Farm. 868 S.W.2d at 299. The supreme court held that, under those circumstances, the trial court could properly authorize service via first class mail. In *Hubicki*, in contrast, the plaintiff had made a single attempt to serve the defendant before moving for alternative service and presented no evidence that the defendant was actually receiving mail at the address for service. 226 S.W.3d at 408. Under those circumstances, the supreme court held that, as a matter of law, the plaintiff had not established that service via regular mail to that address was reasonably calculated to provide notice. *Id.*

The circumstances of this case are more similar to those of *Hubicki*. Here, too, Southern made a single attempt to serve Titus via certified mail at the service address.[6] Southern's only evidence that Titus was actually receiving mail sent to the address for service was the post office form showing that, so far as the post office knew, it was her correct address. Unlike State Farm, Southern did not provide evidence of specific instances of Titus giving that address as her residence or receiving and responding to mail sent to that address. We hold that, under these circumstances, Southern did not establish that service via regular mail to the listed address was reasonably calculated to provide notice.

The affidavit in support of the motion for substituted service was insufficient and Southern did not establish that the alternative method of service was reasonably calculated to provide notice; therefore, there is error apparent on the face of the record and the default judgment cannot

---

[6] In its brief to this court, Southern asserts that it made an attempt to serve Titus at a different address before attempting to serve her at the Oak Knoll address. However, this attempt is not reflected in the record.

9

stand.[7]  We reverse the default judgment and remand the case to the district court for further proceedings.  Pursuant to Texas Rule of Civil Procedure 123, no new service of process is necessary. See Tex. R. Civ. P. 123 ("Where the judgment is reversed on appeal or writ of error for the want of service, or because of defective service of process, no new citation shall be issued or served, but the defendant shall be presumed to have entered his appearance to the term of the court at which the mandate shall be filed."); *Garrels*, 706 S.W.2d at 758 (reversing default judgment because of invalid service, but noting that, under Rule 123, no new service was necessary because appellant, by appealing default judgment, had submitted himself to jurisdiction of trial court).

## CONCLUSION

Because the record does not show strict compliance with the rules for substituted service, we reverse the default judgment and remand the cause to the trial court for further proceedings.

_____

Diane M. Henson, Justice

Before Justices Pemberton, Waldrop and Henson[8]

Reversed and Remanded

Filed:  July 24, 2009

---

[7]  Because of our disposition of this issue, we need not reach Titus's remaining issues challenging the citation, the venue, or the damages award.

[8]  Former Chief Justice Law was originally assigned to author this opinion; the panel was reassigned as of March 3, 2009.